# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
_____ DIVISION
No. _____

| | |
|---|---|
| LENOVO (UNITED STATES) INC., LENOVO GLOBAL TECHNOLOGY (UNITED STATES) INC., and MOTOROLA MOBILITY LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LONGHORN IP LLC and HAMILCAR BARCA IP LLC, <br><br> Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT INVALIDITY AND BAD-FAITH ASSERTION OF PATENT INFRINGEMENT

Plaintiffs Lenovo (United States) Inc. ("Lenovo US"), Lenovo Global Technology (United States) Inc. ("Lenovo Global Tech."), and Motorola Mobility LLC ("Motorola Mobility") (collectively, "Plaintiffs" or "Lenovo"), by and through their attorneys, hereby allege as follows against Defendants Longhorn IP LLC ("Longhorn") and Hamilcar Barca IP LLC ("Hamilcar") (collectively, "Defendants"):

## NATURE AND HISTORY OF THE ACTION

1. This is an action that seeks relief due to Defendants' bad faith assertions of patent infringement against Lenovo. Lenovo seeks a judgment that Defendants violated Article 8 of Chapter 75 of the North Carolina General Statutes, the Abusive Patent Assertions Act ("APAA"), by making bad-faith assertions of patent infringement against Lenovo. Lenovo also seeks a declaratory judgment that United States Patent Nos. 7,486,105 (the "'105 patent," attached as Exhibit 1); 8,086,938 (the "'938 patent," attached as Exhibit 2); 8,407,783 (the "'783 patent,"

1

attached as Exhibit 3); and 8,848,462 (the "'462 patent," attached as Exhibit 4) (collectively the "Asserted Patents") are invalid. Lenovo thus brings this action to halt a coordinated campaign of bad-faith patent assertions directed from Texas by Defendants. Defendants are non-practicing entities that neither make, use, nor sell any product or service. They share common management, common addresses, and an economic structure under which Longhorn receives revenue generated by its affiliated shell entities' licensing and litigation activities.

2. This action is based in part on Lenovo's claim under North Carolina's Abusive Patent Assertions Act ("APAA"), N.C. Gen. Stat. Chapter 75, Article 8, which the General Assembly enacted to protect North Carolina businesses like Lenovo from precisely this kind of conduct. In passing the APAA, the General Assembly found that North Carolina "is home to companies in retail, manufacturing, and other industries, many of whom are customers of technology companies. Those other businesses are more likely to succeed if not inhibited by abusive and bad-faith demands and litigation." G.S. § 75-141(a)(1). The General Assembly also found that "[a]busive patent litigation, and especially the assertion of bad-faith infringement claims, can harm North Carolina companies. A business that receives a letter asserting such claims faces the threat of expensive and protracted litigation and may feel that it has no choice but to settle and to pay a licensing fee even if the claim is meritless." G.S. § 75-141(a)(6). "In lawsuits involving abusive patent assertions, an accused infringer prevailing on the merits may be awarded costs and, less frequently, fees. These awards do not serve as a deterrent to abusive patent assertion entities who have limited liability, as these companies may hold no cash or other assets. North Carolina has a strong interest in making sure that prevailing North Carolina companies sued by abusive patent assertions entities can recover what is awarded to them." G.S. § 75-141(a)(9).

3.      Lenovo is the type of company that the APAA was meant to protect from abusive and bad-faith patent assertions. With more than 3,000 employees in North Carolina alone, Lenovo has a 20-year history in Research Triangle Park and is considered "one of the region's largest private employers" and "part of the backbone of the Triangle's technology scene." The webpage article at Lenovo's next 20 years in the Triangle is all about AI - Axios Raleigh (last accessed July 21, 2026), is attached as Exhibit 5. Lenovo continues to make investments in North Carolina. For example, Lenovo has made a "10-year commitment to the naming rights of Lenovo Center, home to the Carolina Hurricanes and N.C. State basketball." *Id.* In addition, "Lenovo intends to expand its existing manufacturing and fulfillment facility" in Guilford County, investing $77 million which is "expected to create more than 400 new jobs." The webpage article at Lenovo Expands its Guilford County Manufacturing and Fulfillment Facility - Greensboro Chamber of Commerce (last accessed July 21, 2026), is attached as Exhibit 6.

4.      And Defendants' conduct is the type of conduct that the APAA is designed to stop. Defendants sent an October 2023 demand letter, which set their abusive campaign in motion. The October 2023 Letter is attached as Exhibit 7. The letter omitted any specific factual basis for infringement, accused broad and loosely defined categories of products, and provided claim charts for only a few purported "examples." Defendants further refused to share even those charts unless Lenovo first signed a nondisclosure agreement. The letter also contained demonstrably false statements about the origin of the asserted patents, claiming that Hamilcar had acquired a portfolio of patents from a "world-renowned semiconductor company," when public records show that the portfolio was acquired from another patent-monetization entity, Fortieth Floor LLC. *Id.* And prior art predating each patent's priority date renders the asserted claims invalid and, as to the '783 patent, a federal court has already found certain claims indefinite. Defendants knew or should have

known of this invalidating prior art and of the lack of merit in their assertions yet continued to press their demands while withholding material information from Lenovo. These, along with the filing of serial litigation and continued threats to file more litigation, are hallmarks of abusive patent assertion: vague and baseless threats, manufactured settlement pressure, and a business model built on extracting settlements from companies faced with the cost of protracted defense.

5. Lenovo seeks to invalidate the Asserted Patents, remedy the harm Defendants have caused, and further the North Carolina General Assembly's purpose of deterring Defendants (and their numerous related entities) from targeting North Carolina companies with similar bad-faith allegations of patent infringement.

## FACTUAL BACKGROUND

### A. Defendants' Allegations

6. On October 16, 2023, Scott Breedlove of Carter Arnett PLLC sent a letter (the "October 2023 Letter") to licensing@lenovo.com on behalf of Hamilcar Barca IP LLC ("Hamilcar") and Longhorn IP LLC ("Longhorn"). Exh. 7.

7. Publicly available information confirms that licensing@lenovo.com is connected to the Chief Intellectual Property Office located at 8001 Development Drive, Morrisville, NC. *See, e.g.*, Exh. 8 (*Initial Determination*, Inv. No. 337-TA-1397, Order No. 24 (U.S. Int'l Trade Comm'n May 9, 2025)). Therefore, Defendants sent, or caused another to send, a demand to a target in North Carolina.

8. The October 2023 Letter did not contain the address of either Defendant.

9. Upon information and belief, Defendant Longhorn is a limited liability company that does not make, use, or sell any products or services. Such companies are frequently referred to as non-practicing entities ("NPEs") or patent assertion entities.

4

10.     Upon information and belief, Defendant Longhorn owns or controls dozens of shell companies, including Defendant Hamilcar, that have the same manager as Longhorn itself, Mr. Khaled Fekih-Romdhane.

11.     Upon information and belief, those companies purchase patents and assert those patents against operating companies, including in litigation. Longhorn's companies are NPEs whose sole business is acquiring patents and seeking licensing fees from operating companies through threats of patent infringement litigation.

12.     Entities owned by Longhorn IP have filed more than thirty patent infringement lawsuits, including at least four against Plaintiffs' ultimate parent holding company, Lenovo Group Limited ("LGL"), since October 2025, three of them in June 2026 alone.

13.     Although Defendant Longhorn attempts to portray itself as a separate entity (*e.g.*, by claiming that Defendant Hamilcar "has retained Longhorn IP LLC . . . to assist in licensing this portfolio"), Defendant Longhorn lists at least twenty companies on its website, including Defendant Hamilcar, suggesting Defendant Longhorn considers those patents to be its own assets. A screenshot of the website Portfolios | Longhorn IP (last accessed July 21, 2026) is attached as Exhibit 9; *see also, e.g.*, Exh. 10 (*Micron Tech., Inc. et al. v. Longhorn IP, LLC*, Nos. 1:22-cv-00282-DCN, 1:22-cv-00273-DCN, Dkt. 50 (Memorandum Decision and Order) at 25 (D. Idaho May 3, 2023)). Further, upon information and belief, Defendant Longhorn is contractually entitled to receive most if not all of the revenue generated from the litigation and/or licensing activities of each of the twenty companies listed on its website, including Defendant Hamilcar.

14.     Upon information and belief, Defendants share the same sole member managing the companies, are represented by the same counsel, and have identical interests, indicating that Defendants are using nominally distinct entities to advance a coordinated patent assertion

campaign under common control, rendering that assertion deceptive. *See* Exh. 10 at 5, 24-25 (confirming such information is evidence that "[t]he claim or assertion of patent infringement is deceptive"). Indeed, as recently as July 22, 2026, Mr. Fekih-Romdhane specifically informed Lenovo that other Longhorn IP affiliates were planning to file further complaints. Public records confirm that Defendant Longhorn's companies share one of two addresses. One of those addresses is Mr. Fekih-Romdhane's home address, and the other is a third-party business for private office rentals and coworking spaces. Both Defendants list Mr. Fekih-Romdhane's home address as their business address.

15.     The October 2023 Letter specifically identifies only the '938 patent, the '783 patent, the '462 patent, and the '105 patent. Defendants claim that they "acquired a portfolio of patents"—including the Asserted Patents—"in 2021 from a world-renowned semiconductor company." Exh. 7 (October 2023 Letter) at 1. That claim is deceptive. Publicly available records confirm that Defendants did not acquire those patents from any "world-renowned semiconductor company" but instead acquired the patent portfolio from another NPE. Specifically, upon information and belief, in May 2021, MediaTek transferred a patent portfolio, including 18 U.S. patents, to Fortieth Floor LLC, an entity associated with other non-practicing patent monetization firm Steger IP. The webpage https://www.mondaq.com/unitedstates/patent/1215726/sk-hynix-sues-longhorn-ip-and-two-of-its-portfolio-entities (last accessed July 19, 2026) is attached as Exhibit 11. On December 26, 2021, Fortieth Floor, LLC assigned the rights to those patents, including the Asserted Patents, to Defendant Hamilcar. The patent assignment as filed with the USPTO is attached as Exhibit 12.

16. The October 2023 Letter alleges that certain Lenovo products infringe "[a]t least" claim 1 of the '938 patent; claims 1, 2, 3, 11, and 12 of the '783 patent; claims 1, 9, and 10 of the '462 patent; and claims 8–12 and 14–16 of the '105 patent.

17. The only specifically identified products that Defendants allege practice the Asserted Patents are Lenovo ThinkPad products or Lenovo ThinkEdge servers. Plaintiffs Lenovo US and Lenovo Global Tech. are responsible for importing, offering to sell, marketing, selling, and distributing the Lenovo ThinkPad and ThinkEdge products in the United States. Nevertheless, the October 2023 Letter was purportedly addressed to Lenovo Group Limited ("LGL") in Hong Kong.

18. Upon information and belief, Defendants sent their initial letter to LGL for purposes of forum shopping. Defendants know that LGL is a holding company that does not design, develop, manufacture, or distribute products or services, or control any activities of its subsidiaries in the design, development, manufacture, or distribution of products or services. Indeed, Defendants' affiliates have cited Lenovo Group Limited's 2024/2025 Annual Report in at least one Complaint (*Nordic Interactive Techs. v. Lenovo Grp. Ltd.*, 2:26-cv-477, Dkt. 1 (E.D. Tex.)). The Annual Report recites in the section entitled "About Lenovo" that "Lenovo Group Limited ('The Company') is the ultimate holding company of Lenovo Group. As a holding company, it does not design, develop, manufacture, or distribute products or services, or control any activities of the Company's subsidiaries in the design, development, manufacture, or distribution of products or services." *See* Exhibit 13 (Excerpts from the Lenovo Group Limited 2024/2025 Annual Report, available at https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025 (last accessed July 21, 2026)).

19.     Defendants targeted LGL, a holding company organized under the laws of Hong Kong, in the Eastern District of Texas, rather than the home districts of the targeted U.S. operating entities—Lenovo US, Lenovo Global Tech., or Motorola Mobility. For example, Defendant Longhorn's other NPEs filed four lawsuits against LGL without inclusion of the relevant operating companies in the Eastern District of Texas. *See Dido Wireless Innovations LLC v. Lenovo Grp. Ltd.*, No. 2:26-cv-00521 (E.D. Tex. June 30, 2026); *Nordic Interactive Techs. LLC v. Lenovo Grp. Ltd.*, No. 2:26-cv-00477 (E.D. Tex. June 17, 2026); *Hannibal IP LLC v. Lenovo Grp. Ltd.*, No. 2:26-cv-00442 (E.D. Tex. June 3, 2026); *Hermes IP Management LLC v. Lenovo Grp. Ltd.*, No. 2:25-cv-00944 (E.D. Tex. Oct. 3, 2025).

20.     Upon information and belief, Defendants know that joinder of the U.S. operating companies—Lenovo US, Lenovo Global Tech., or Motorola Mobility—would defeat venue in their preferred Texas venues. Defendants' intentional omission of Lenovo US and Lenovo Global Tech. from the October 2023 Letter and in the lawsuits filed by Defendant Longhorn's other NPEs is intended to circumvent the U.S. Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, which confirmed important limits to the venue for patent infringement cases.

21.     The October 2023 Letter did not contain any factual allegations concerning the specific areas in which any of Plaintiffs' products, services, and technology allegedly infringe any of the Asserted Patents. Exh. 7 (October 2023 Letter) at 2. Defendants refused to share that information unless Plaintiffs entered into the Non-Disclosure Agreement and agreed to treat those claim charts as privileged settlement information.

22.     In fact, Defendants alleged infringement of a broad scope of products without attempting to identify the specific products for which they had allegedly performed a reasonable investigation. Specifically, Defendants alleged that Lenovo "drives and other systems and devices

having a Serial ATA Revision 3.0 and later interface," "servers and other systems and devices supporting the ARMv8-A architecture and later," "laptops and other systems and devices with DDR4 and later memory devices, modules, or memory interfaces with Pseudo Open Drain (POD) signaling and architecture," and "laptops and other systems and devices" infringed the Asserted Patents. Exh. 7 (October 2023 Letter) at 1-2. Despite accusing broad categories of products, Defendants had only prepared claim charts of "examples of how these patents apply to Lenovo's products." Exh. 7 (October 2023 Letter) at 2. Because Defendants only prepared claim charts for limited examples, Defendants failed to conduct an analysis comparing the Asserted Patents to the full scope of products Defendants accuse of alleged infringement.

23. In November 2023, Lenovo requested claim charts, which Mr. Breedlove confirmed in writing. However, Defendants did not provide charts for approximately nine months despite Lenovo's request, providing them only after the parties entered into the Non-Disclosure Agreement in August 2024. The General Assembly recognized that withholding such information (e.g., intentional delay in providing specific infringement allegations) increases the burden of potential litigation on targets like Lenovo and is meant to impede rather than facilitate resolution of the claims. G.S. § 75-141(a)(5) ("[I]t is necessary that [North Carolina companies] receive specific information regarding how their product, service, or technology may have infringed the patent at issue . . . *at an early stage* [to] facilitate the resolution of claims and lessen the burden of potential litigation on North Carolina companies." (emphasis added)).

24. Defendants continued to negotiate with Lenovo after the parties entered into the Non-Disclosure Agreement in August 2024.

25. Lenovo expects that discovery into these negotiations will provide additional evidence of Defendants' bad-faith assertion of patent infringement, including, but not limited to, factors (5) and (9) of G.S. § 75-143(a).

26. Defendants' infringement claims are meritless and objectively baseless, and Defendants' bad faith is shown because they at least knew or should have known this, especially because Lenovo rebutted Defendants' infringement theories. Similarly, Defendants knew or should have known that the Asserted Patents are invalid.

## B. Invalidity of the Asserted Patents

27. The '105 patent was issued by the United States Patent and Trademark Office on February 3, 2009, and is entitled "Memory systems and memory access methods." Upon information and belief, one or more of the Defendants claim to own or hold an exclusive license to the '105 patent.

28. The '938 patent was issued by the United States Patent and Trademark Office on December 27, 2011, and is entitled "Method for processing noise interference." Upon information and belief, one or more of the Defendants claim to own or hold an exclusive license to the '938 patent.

29. The '783 patent was issued by the United States Patent and Trademark Office on March 26, 2013, and is entitled "Computing system providing normal security and high security services." Upon information and belief, one or more of the Defendants claim to own or hold an exclusive license to the '783 patent.

30. The '462 patent was issued by the United States Patent and Trademark Office on September 30, 2014, and is entitled "Low power memory controllers." Upon information and belief, one or more of the Defendants claim to own or hold an exclusive license to the '462 patent.

10

31.     As discussed above, Defendants have asserted or threatened to assert one or more of the Asserted Patents against Plaintiffs, alleging that Plaintiffs' products infringe the Asserted Patents.

32.     Therefore, Defendants' assertions have created an actual, substantial, and continuing controversy between Plaintiffs and Defendants regarding the validity of the Asserted Patents. Plaintiffs contend that the Asserted Patents are invalid, and Defendants' threats of litigation based on those patents give rise to a case or controversy sufficient to invoke this Court's jurisdiction under the Declaratory Judgment Act.

33.     The technology that is the subject of the '105 patent was known and used prior to the alleged inventive date of the patent. Upon information and belief, Hamilcar knew, or should have known, of invalidating prior art. For example, United States Patent No. 8,625,371 assigned to Rambus Inc. and claiming priority to Application No. 09/841,911, filed April 24, 2001, discloses a memory system with substantially identical architecture to the '105 patent—including a memory controller component, memory components organized in a rank and coupled through a common data bus, and termination components that may be incorporated into the memory controller component and into the memory components. The Rambus patent discloses the same or substantially the same subject matter claimed in the '105 patent and therefore provides strong support that the claims of the '105 patent are invalid.

34.     Further, the '105 patent is invalid for failure to meet one or more of the conditions of patentability under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of additional non-limiting examples, upon information and belief, the claims of the '105 patent are invalid as obvious under U.S. Patent No. 8,625,371 alone (as discussed above), U.S. Publication Nos. 2006/0146627 to Park alone, or

either reference alternatively in view of each other and/or U.S. Publication Nos. 2003/0043683 to Funaba, 2004/0032319 assigned to Samsung Electronics Co. Ltd., and/or 2007/0279084 to Oh.

35. The technology that is the subject of the '938 patent was known and used prior to the alleged inventive date of the patent. Upon information and belief, Hamilcar knew, or should have known, of invalidating prior art. For example, the '938 patent's own specification acknowledges SATA as background technology ('938 patent at 1:20-26) and the SATA 1.0 specification was published and publicly available before the '938 patent's earliest priority date of April 22, 2004. The SATA 1.0 specification describes substantially all of the mechanisms for handling physical, link, and transport layer errors that the '938 patent purports to claim.

36. To take nonlimiting examples, the SATA 1.0 specification teaches that for some errors the "Link Layer will retain this error information, and at the close of the received frame the Link Layer shall provide the negative acknowledgement, R_ERR, as the frame handshake, and shall notify the Transport Layer of the error." §11.3.2.1. "Link error conditions are reported to the Transport layer via a private interface between the Link and Transport Layers. Additionally, Link errors are reported in the Interface Error register as defined section 10.1.2." §11.3.3. Thus, the SATA 1.0 specification discloses the same or substantially the same subject matter claimed in the '938 patent and therefore provides strong support that the claims of the '938 patent are invalid.

37. Further, the '938 patent is invalid for failure to meet one or more of the conditions of patentability under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of additional non-limiting examples, upon information and belief, the claims of the '938 patent are invalid as obvious under the White Paper for the SATA Advance Test Tool, Drive Master Professional 2004, ULink Technology by

Yun Wang ("Wang") alone or alternatively in view of U.S. Publication Nos. 2005/0058079 to Utsunomiya and/or U.S. Publication 2004/0177183 to Takahashi.

38. The technology that is the subject of the '783 patent was known and used prior to the alleged inventive date of the patent. Upon information and belief, Hamilcar knew, or should have known, of invalidating prior art. For example, the '783 patent's own specification acknowledges ARM's TrustZone hardware architecture stating that "Trustzone hardware architecture, developed by ARM, provides normal security services and high security services using a single physical processor core." '783 patent at 1:26-28. TrustZone technology was first introduced in the ARMv6 architecture and was continued in the ARMv7 and ARMv7A architecture which were published before the priority date of the '783 patent. These materials disclose the same or substantially the same subject matter claimed in the '783 patent and therefore provide strong support that the claims of the '783 patent are invalid.

39. Further, the '783 patent is invalid for failure to meet one or more of the conditions of patentability under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of additional non-limiting examples, upon information and belief, the claims of the '783 patent are invalid as obvious under U.S. Publication No. 2006/0047959 alone or alternatively in view of U.S. Patent Nos. 4,747,040 assigned to AT&T Corp., 7,529,873 to Lambourn and/or U.S. Publication No. 2007/0002831 assigned to BlackBerry Ltd.

40. A district court has found that dependent claims 3 and 12 of the '783 patent are indefinite. *See Hamilcar Barca IP LLC v. Nvidia Corp.*, No. 1:25-CV-00620-RP, Dkt. 53 (Markman Order) (W.D. Tex. Apr. 30, 2026). Despite the court invalidating these claims over two months ago, Defendants have not withdrawn their allegations that Plaintiffs' products infringe

13

claims 3 and 12 of the '783 patent. *See, e.g.*, Exh. 7 (October 2023 Letter) at 1. Indeed, Carter Arnett PLLC and Scott Breedlove are counsel of record in the *Hamilcar Barca v. Nvidia* case, are aware that two claims that they have asserted against Plaintiffs have been found indefinite and yet have not disclosed any finding of invalidity to Plaintiffs.

41. The technology that is the subject of the '462 patent was known and used prior to the alleged inventive date of the patent. Upon information and belief, Hamilcar knew, or should have known, of invalidating prior art. For example, the Intel (Altera) FPGA with DDR2 describes a double parallel termination scheme using on-die termination on DDR2 SDRAM with a memory-side series resistor. Documentation related to the Intel (Altera) FPGA with DDR2 was publicly released no later than September 2003—before the '462 patent's priority date. Similarly, the DDR3 memory standard, publicly released in 2007, also constitutes prior art to the '462 patent. These materials disclose the same or substantially the same subject matter claimed in the '462 patent and therefore provide strong support that the claims of the '462 patent are invalid.

42. Further, the '462 patent is invalid for failure to meet one or more of the conditions of patentability under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of additional non-limiting examples, upon information and belief, the claims of the '462 patent are invalid as obvious under U.S. Publication No. 2011/0205832 assigned to Samsung Electronics Co. Ltd. alone, U.S. Publication No. 2011/0057684 assigned to Samsung Electronics Co. Ltd. alone, U.S. Patent No. 6,160,417 assigned to Fujitsu Ltd. alone or the preceding references alternatively in view of each other, and/or U.S. Publication No. 2006/0146627 to Park and/or U.S. Patent No. 8,625,371 assigned to Rambus Inc.

### C. Defendants' Other Allegations and Assertions

43. Upon information and belief, Longhorn IP and Hamilcar have made similarly baseless allegations against at least one other technology company, SK hynix. For example, Defendants, through Mr. Breedlove, alleged SK hynix infringed the '079, '462, and '938 patents in two letters dated March 4, 2022 and March 11, 2022. *See SK hynix & SK hynix America Inc. v. Longhorn IP LLC et al.*, No. 22-cv-3915, Dkt. 1 (Complaint for Declaratory Judgment) ¶¶ 43-44 (N.D. Cal. July 5, 2022). Like the deficient letter to LGL here, Defendants' letter to SK hynix provided bare-bones allegations accusing a broad swath of SK hynix products of infringing certain patents, only analyzed exemplary SK hynix products and processes, and refused to provide any claim charts unless SK hynix agreed to enter a confidentiality agreement and treat that information as privileged under Federal Rule of Evidence 408. *Id.* Dkts 1-10, 1-11, 1-12.

44. Upon information and belief, Defendants were aware that their allegations lacked merit and were objectively baseless because, "[o]n June 21, 2022, . . . SK hynix presented responses to the infringement allegations [made by Hamilcar and Longhorn IP] concerning the '079, '462, and '938 patents, raising multiple grounds for non-infringement and identifying prior art that would likely invalidate the asserted claims." *Id.* Dkt. 1 (Complaint for Declaratory Judgment) ¶ 47. Defendants, however, "took remarkable positions—including by stating at one point that the language of *a particular asserted claim need not be considered or discussed in evaluating SK hynix's non-infringement position.*" *Id.* ¶ 48 (emphasis added).

45. As further evidence of Defendants' subjective baselessness, Defendant Longhorn IP's other NPEs have a history of baseless litigation against Lenovo, *including three lawsuits brought in June 2026 alone*. Defendants are relying on serial litigation against Plaintiffs' holding parent company, LGL, to coerce Plaintiffs into agreeing to pay Defendants' meritless demands by making it too expensive to prove that Defendants' allegations are baseless in each separate lawsuit.

At least one court has recognized that it is "a conservative estimate of litigating a single-patent suit from pre-trial through to appeal is $1.25 million," and that only increases as the number of patents increase. *See, e.g.*, Exh. 10 at 29. At least one of Defendants' other targets—the technology company Micron—has been subject to this same threat of serial litigation and constant demand that Micron would need to secure licenses from multiple Longhorn NPEs to avoid litigation. *Id.* at 25 ("Katana informed Micron that, to escape liability, it would need to secure licenses from two other Longhorn affiliates: Hamilcar Barca IP, LLC, and Trenchant Blade Technologies, LLC.").

46. As just one example, Nordic Interactive Technologies LLC ("Nordic"), a NPE of Defendant Longhorn, sued Plaintiffs' holding company, LGL, in the Eastern District of Texas for infringement of expired U.S. Patent No. 7,590,097. As further evidence of their forum shopping, Nordic alleges, "Venue is proper under 28 U.S.C. § 1391(c)" and does not discuss Section 1400. *Nordic Interactive Tech.*, No. 2:26-cv-477, Dkt. 1, ¶ 16. Judge Gilstrap in the Eastern District of Texas has found such allegations violate Federal Rule of Civil Procedure 11(b)(2). *Symbology Innovations, LLC v. Valve Corp.*, No. 2:23-cv-00419-JRG, Dkt. 110, at 15-16 (E.D. Tex. Jan. 31, 2025) ("An objectively reasonable attorney would not believe and would not have alleged . . . that venue was proper under 28 U.S.C. § 1391 when it is clear that 28 U.S.C. § 1400 is the sole statutory basis for venue in patent case.").

47. Despite only asserting an expired patent, Nordic maintains that it "is entitled to an injunction." *Nordic Interactive Tech.*, No. 2:26-cv-477, Dkt. 1, ¶ 51. It is frivolous and objectively baseless to seek an injunction for an expired patent because "when the rights secured by a patent are no longer protectable by virtue of expiration or unenforceability, entitlement to injunctive relief becomes moot because such relief is no longer available." *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994).

48.     Nordic limited its infringement allegations to method claims 19–24 yet inexplicably alleges that there is direct infringement due to "making, . . . selling, or offering to sell, and/or importing in the United States" the accused products. *Nordic Interactive Tech.*, No. 2:26-cv-477, Dkt. 1, ¶ 27. Again, this allegation is frivolous and objectively baseless because a method claim can only be infringed by using that method. The Federal Circuit has repeatedly held that a method claim cannot be infringed by any other activity under Section 271, including making, offering to sell, selling, or importing any accused products. *See, e.g.*, *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022) ("[P]atentees cannot recover damages based on sales of products with the mere capability to practice the claimed method. Rather, where the only asserted claim is a method claim, the damages base should be limited to products that were actually used to perform the claimed method."); *Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854, 879 (Fed. Cir. 2024) ("There is no established recognition in patent law of direct infringement by 'making' a 'method'; and, indeed, we have indicated that direct infringement is limited to using the method, stating that '[a] method claim is directly infringed only by one practicing the patented method.'" (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993))).

49.     Nordic further fails to specifically allege how LGL directly infringed through use of the method, thus failing to allege direct infringement.

50.     All of this representative evidence shows that Defendants have engaged in bad-faith assertions and litigation of the Asserted Patents and have engaged in bad-faith negotiations with Lenovo. *See, e.g.*, Exh. 10 at 5, 25-26 (explaining that Micron's history with Defendant Longhorn's other NPEs is evidence that "[t]he person or its subsidiaries or affiliates have previously filed or threatened to file one (1) or more lawsuits alleging patent infringement based

on the same or similar claim, the person attempted to enforce the claim of patent infringement in litigation and a court found the claim to be meritless").

<h3 style="text-align:center"><u>THE PARTIES</u></h3>

51. Plaintiff Lenovo (United States) Inc. ("Lenovo US") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 8001 Development Drive, Morrisville, North Carolina 27560. Lenovo sells Lenovo-branded consumer electronics devices including laptops and other technology products in the United States.

52. Plaintiff Lenovo Global Technology (United States) Inc. ("Lenovo Global Tech.") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 8001 Development Drive, Morrisville, North Carolina 27560. Lenovo Global Tech. sells devices including servers and other technology products in the United States.

53. Plaintiff Motorola Mobility LLC ("Motorola Mobility") is a limited liability company organized under the laws of the state of Delaware, with its principal place of business at 222 W. Merchandise Mart Plaza, #16, Chicago, IL 60654. Motorola Mobility Holdings LLC is the sole member of Motorola Mobility LLC. Motorola Mobility Holdings LLC is a limited liability company organized under the laws of the state of Delaware, with its principal place of business at 222 W. Merchandise Mart Plaza, Chicago, IL 60654. Motorola Mobility Holdings LLC is a wholly owned subsidiary of Lenovo Group Limited, which is a corporation organized under the laws of Hong Kong with a principal place of business at Units 616-617, Level 6, Cyberport 5, 100 Cyberport Road, Pokfulam, Hong Kong.

54. Upon information and belief, Defendant Longhorn IP LLC is a limited liability company organized under the laws of the state of Texas. Upon information and belief, Tanit Ventures, Inc. ("Tanit") is the sole member of Defendant Longhorn. Upon information and belief,

Tanit is incorporated under the laws of the state of Texas and has its principal place of business at 5204 Bluewater Drive, Frisco, TX 75034.

55. Upon information and belief, Defendant Hamilcar Barca IP LLC is a limited liability company organized and existing under the laws of the State of Texas. Upon information and belief, Tanit is the sole member of Defendant Hamilcar.

## JURISDICTION AND VENUE

56. This is an action arising under the patent laws of the United States, Title 35, United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves claims arising under the patent laws of the United States.

57. An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the validity of United States Patent Nos. 7,486,105 (the "'105 patent"); 8,086,938 (the "'938 patent"); 8,407,783 (the "'783 patent"); and 8,848,462 (the "'462 patent") (collectively, the "Asserted Patents"). This Court may issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

58. This Court has supplemental jurisdiction over Plaintiffs' state-law APAA claim pursuant to 28 U.S.C. § 1367. Lenovo's APAA claim is so related to its invalidity declaratory judgment claims over which the Court has original jurisdiction that the APAA claim forms part of the same case or controversy under Article III of the Constitution. The claims arise out of the same common nucleus of operative facts and have a logical relationship to each other.

59. This Court has personal jurisdiction over Defendants by virtue of their sufficient minimum contacts with this forum. Personal jurisdiction is proper in this District because Defendants have sent, or caused another to send, a demand to Lenovo in North Carolina and thus

have purposefully availed themselves of the privilege of conducting business in North Carolina, making them subject to suit in North Carolina. APAA, § 75-145(e).

60. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) with respect to Plaintiffs' claims against Defendants because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Defendants' bad-faith assertions of patent infringement directed at Plaintiffs in Morrisville, North Carolina.

## COUNT I

### Declaratory Judgment of Invalidity of U.S. Patent No. 7,486,105

61. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-60 as if fully set forth herein.

62. An actual and justiciable controversy exists between Plaintiffs and Defendants as to the validity of the '105 patent within the meaning of 28 U.S.C. §§ 2201 and 2202.

63. The '105 patent is invalid for failure to meet one or more of the conditions of patentability under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and Plaintiffs are entitled to a declaration to that effect. By way of non-limiting example as discussed above, upon information and belief, the claims of the '105 patent are invalid as anticipated and/or obvious under United States Patent No. 8,625,371 assigned to Rambus Inc.

64. Defendants' assertions have created an actual, substantial, and continuing controversy between Plaintiffs and Defendants regarding the validity of the '105 patent. Plaintiffs contend that the '105 patent is invalid, and Defendants' threats of litigation based on the '105 patent give rise to a case or controversy sufficient to invoke this Court's jurisdiction under the Declaratory Judgment Act.

65. Plaintiffs seek a judgment declaring that the '105 patent is invalid.

## COUNT II

**Declaratory Judgment of Invalidity of U.S. Patent No. 8,086,938**

66. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-60 as if fully set forth herein.

67. An actual and justiciable controversy exists between Plaintiffs and Defendants as to the validity of the '938 patent within the meaning of 28 U.S.C. §§ 2201 and 2202.

68. The '938 patent is invalid for failure to meet one or more of the conditions of patentability under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and Plaintiffs are entitled to a declaration to that effect. By way of non-limiting example as discussed above, upon information and belief, the claims of the '938 patent are invalid as anticipated and/or obvious under the SATA 1.0 specification.

69. Defendants' assertions have created an actual, substantial, and continuing controversy between Plaintiffs and Defendants regarding the validity of the '938 patent. Plaintiffs contend that the '938 patent is invalid, and Defendants' threats of litigation based on the '938 patent give rise to a case or controversy sufficient to invoke this Court's jurisdiction under the Declaratory Judgment Act.

70. Plaintiffs seek a judgment declaring that the '938 patent is invalid.

## COUNT III

**Declaratory Judgment of Invalidity of U.S. Patent No. 8,407,783**

71. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-60 as if fully set forth herein.

21

72. An actual and justiciable controversy exists between Plaintiffs and Defendants as to the validity of the '783 patent within the meaning of 28 U.S.C. §§ 2201 and 2202.

73. The '783 patent is invalid for failure to meet one or more of the conditions of patentability under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and Plaintiffs are entitled to a declaration to that effect. By way of non-limiting example as discussed above, upon information and belief, the claims of the '783 patent are invalid as anticipated and/or obvious under the ARMv7A specification.

74. Defendants' assertions have created an actual, substantial, and continuing controversy between Plaintiffs and Defendants regarding the validity of the '783 patent. Plaintiffs contend that the '783 patent is invalid, and Defendants' threats of litigation based on the '783 patent give rise to a case or controversy sufficient to invoke this Court's jurisdiction under the Declaratory Judgment Act.

75. Plaintiffs seek a judgment declaring that the '783 patent is invalid.


## COUNT IV

### Declaratory Judgment of Invalidity of U.S. Patent No. 8,848,462

76. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-60 as if fully set forth herein.

77. An actual and justiciable controversy exists between Plaintiffs and Defendants as to the validity of the '462 patent within the meaning of 28 U.S.C. §§ 2201 and 2202.

78. The '462 patent is invalid for failure to meet one or more of the conditions of patentability under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, but not

limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and Plaintiffs are entitled to a declaration to that effect. By way of non-limiting example as discussed above, upon information and belief, the claims of the '462 patent are invalid as anticipated and/or obvious under Intel (Altera) FPGA with DDR2.

79. Defendants' assertions have created an actual, substantial, and continuing controversy between Plaintiffs and Defendants regarding the validity of the '462 patent. Plaintiffs contend that the '462 patent is invalid, and Defendants' threats of litigation based on the '462 patent give rise to a case or controversy sufficient to invoke this Court's jurisdiction under the Declaratory Judgment Act.

80. Plaintiffs seek a judgment declaring that the '462 patent is invalid.

**COUNT V**

**Violation of the North Carolina Abusive Patent Assertion Act**

81. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-60 as if fully set forth herein.

82. Defendants have made bad-faith assertions of patent infringement against Plaintiffs by accusing them of infringing the Asserted Patents.

83. Defendants' bad faith is demonstrated by at least the following:

a. Defendants' initial demand in the October 2023 Letter did not contain the address of either of the Defendants nor any factual allegations concerning the specific areas in which Lenovo's products, services, and technology allegedly infringe any claim of the Asserted Patents. G.S. § 75-143(a)(1)(b) & (c).

23

b.    After Lenovo requested claim charts (i.e., factual allegations concerning the specific areas in which its products, services, and technology allegedly infringe any claim of the Asserted Patents), Defendants waited over nine months to send claim charts and would not share that information without entering into the Non-Disclosure Agreement. G.S. § 75-143(a)(3).

c.    As evidenced by the broad number and scope of products that Defendants allege infringe the Asserted Patents, Defendants' analysis of a limited number of "example" products was not a sufficient investigation comparing the asserted claims of the Asserted Patents to the full scope of accused products and did not identify specific areas in which the full scope of all the accused products are covered by the asserted claims of the Asserted Patents. G.S. § 75-143(a)(2).

d.    Defendants used the threat of, and actual filing of, serial litigation against Plaintiffs' ultimate parent company to increase the cost of litigation to demand a settlement that is far below the cost of defending multiple potential or actual lawsuits. Defendants have engaged in similar patterns of behavior against other targets, including Micron. G.S. § 75-143(a)(5).

e.    Defendants' assertions of infringement of the Asserted Patents are meritless and objectively baseless because Defendants have been informed that their infringement allegations were meritless and because each of the asserted claims of the Asserted Patents is invalid. Defendants knew or should have known their assertions of infringement of the Asserted Patents are meritless and objectively baseless at least because: (1) Defendants have been

24

informed by Plaintiffs and by prior targets that the Asserted Patents are invalid; (2) a district court has found at least two asserted claims invalid as indefinite; (3) Defendants have been informed by Plaintiffs and by prior targets that their infringement allegations were meritless; and (4) Defendants have taken unsupported positions that the language of a particular asserted claim need not be considered or discussed in evaluating infringement. G.S. § 75-143(a)(6).

f.  Defendants' October 2023 Letter contains multiple deceptive statements regarding the relationship between Defendant Longhorn and Defendant Hamilcar and regarding the acquisition of the Asserted Patents. G.S. § 75-143(a)(7).

g.  Defendants have caused other Longhorn NPEs to file serial litigation against Plaintiffs' ultimate parent company, LGL, in the Eastern District of Texas that contain frivolous and objectively baseless allegations, including a request for an injunction despite the asserted patent having expired. G.S. § 75-143(a)(8), (11), & (12).

h.  Defendants have previously sent demand letters to at least Micron that are substantially the same as the October 2023 Letter because they do not include any claim charts or factual allegations supporting infringement, purport to accuse broad numbers of products of infringement while identifying only a handful of specific products, and refuse to provide information regarding infringement without entering into confidentiality agreements. G.S. § 75-143(a)(8) & (9).

i. Defendants and their attorneys engaging in negotiations with Plaintiffs are aware of but failed to disclose that two of the asserted claims in the October 2023 Letter have been found invalid. G.S. § 75-143(a)(10).

84. Defendants' bad faith is further demonstrated by the lack of evidence of good faith under § 75-143(b):

a. For the same reasons discussed above as to G.S. § 75-143(a)(1), (2), and (3), Defendants did not act in good faith based on G.S. § 75-143(b)(1)–(3).

b. Defendants do not make any investment in the use of the Asserted Patents nor in the production or sale of a product or item that is covered by the Asserted Patents. G.S. § 75-143(b)(4).

c. Defendants are neither the inventors of the Asserted Patents nor the original assignee. G.S. § 75-143(b)(5).

d. Defendants are not institutions of higher education or technology transfer organizations owned or affiliated with an institution of higher education. G.S. § 75-143(b)(3).

e. All of the facts discussed above—including Defendants' forum shopping, the co-pending lawsuit brought by Micron for the violation of the Idaho anti-troll statute, Defendants' serial litigation against Lenovo's ultimate parent company based on meritless claims, and SK hynix's declaratory judgment suit against Defendant Hamilcar—confirm that Defendants have not demonstrated good-faith business practices generally and in previous efforts to enforce the Asserted Patents. G.S. § 75-143(b)(6).

26

f.     Defendants have never successfully enforced any of the Asserted Patents in litigation because no litigation has ever reached a decision on the merits. G.S. § 75-143(b)(6). Instead, the only merits decision related to the Asserted Patents was to invalidate certain claims.

85.     As a result of Defendants' bad-faith patent assertions, Lenovo has suffered and continues to suffer damages and incur costs, fees (including attorneys' fees), and other harm, at least including from investigating Defendants' meritless claims, that are recoverable under § 75-145(b)(1)–(3). Lenovo has been forced to divert resources to research, review, and investigate Defendants' claims as well as to correspond with Defendants and their attorneys to defend against the claims.

86.     Lenovo reserves the right to file a motion requesting that the Court require Defendants to post a bond under G.S. § 75-144.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

A.     A declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that U.S. Patent No. 7,486,105 is invalid;

B.     A declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that U.S. Patent No. 8,086,938 is invalid;

C.     A declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that U.S. Patent No. 8,407,783 is invalid;

D.     A declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that U.S. Patent No. 8,848,462 is invalid;

E.     A finding that this is an exceptional case under 35 U.S.C. § 285, and an award of Plaintiffs' reasonable attorney's fees and costs;

F.     Awarding Plaintiffs all damages, costs and fees, including reasonable attorneys' fees and costs pursuant to the APAA;

G.     Awarding Plaintiffs exemplary damages in the amount of three times the total of damages, costs, and fees;

H.     Prohibiting Defendants from making further bad-faith assertions of patent infringement against Plaintiffs, their customers, and their products;

I.     Upon motion by Lenovo, requiring Defendants to post a bond in an amount equal to a good-faith estimate of Plaintiffs' fees and costs to litigate the claim and amounts reasonably likely to be recovered under G.S. § 75-145 not to exceed $500,000;

J.     Awarding pre-judgment and post-judgment interest as allowed by law; and

K.     Awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted on July 23, 2026.

By: */s/ Clay C. Wheeler*
Clay C. Wheeler
KILPATRICK TOWNSEND &
STOCKTON LLP
4208 Six Forks Road
Suite 1400

Raleigh, NC 27609
Telephone: 919 420-1700
Fax: 919 420-1800
N.C. Bar Number 38713
cwheeler@ktslaw.com

*Attorneys for Plaintiffs*